UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL J. HOOVER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 07-1100** |
| **FLORIDA HYDRO, INC.** | **SECTION: "B" (4)** |

## ORDER

Before the Court is a **Motion to Reconsider the Court's Order (R. Doc. 112) As Amended (R. Doc. 116), Denying in Part Plaintiff's Motion to Quash Defendant's Subpoena *Duces Tecum* Issued to Third-Party Mary Catherine Hoover**, filed by the Plaintiff, Michael J. Hoover ("Hoover"). (R. Doc. 122) The Defendant, Florida Hydro, Inc. ("Florida Hydro"), filed a Memorandum in Opposition (R. Doc. 128), to which Hoover filed a Reply Memorandum. (R. Doc. 134). The motion was heard without oral argument on October 29, 2008.

**I.  Background**

This contract action arises from a dispute between Hoover, a Louisiana resident, and Florida Hydro, a Florida corporation, regarding a purported oral agreement, wherein Florida Hydro promised Hoover stock ownership in exchange for his promise to secure commercial funding for the company. (R. Doc. 1-3). Florida Hydro's president, director, officer, and shareholder, Herbert L. Williams ("Williams"), obtained a patent for a hydroelectric generator and sought capital to commercialize the invention. (R. Doc. 1-3; R. Doc. 23). His initial efforts to secure funding were

fruitless. (R. Doc. 1-3; R. Doc. 23).

In an effort to provide assistance, Michael J. Hoover, a family friend, developed a business plan based on Williams's generator. (R. Doc. 1-3; R. Doc. 23). The plan was entitled Gulf Stream Energy ("Gulf Stream"). (R. Doc. 1-3; R. Doc. 23). Thereafter, Hoover sought to enter into a licensing agreement for the hydroelectric generator with Williams, but with no success. (R. Doc. 1-3; R. Doc. 23). However, on or about June 13, 2003, Williams purportedly offered to make Hoover a major owner and to issue him one-half (½) of his Florida Hydro stock, in lieu of licensing the technology. (R. Doc. 1-3).

Hoover claims that, although he verbally accepted the offer, no written agreement was executed to that effect. (R. Doc. 1-3). He alleges that, as a result of his substantial efforts, Florida Hydro became the most attractive corporate profile in its industry and became successful (R. Doc. 1-3). As a result, Hoover resigned from his employment with Florida Hydro and filed suit, alleging: (1) breach of contract; (2) promissory estoppel/detrimental reliance; (3) unjust enrichment; and (4) fraudulent inducement. (R. Doc. 1-3).

During the course of the litigation, Florida Hydro issued a subpoena *duces tecum* for the deposition of Shaun Sanghani ("Sanghani"), the friend and former roommate of the plaintiff Michael Hoover. (R. Doc. 93-4, Ex. B). The subpoena commanded his testimony and the production and inspection of his laptop computer, flash drive, hard drive, PC, or other electronic data storage that has any responsive documents.[1] (R. Doc. 93-4, Ex. B). The subpoena also requested documents, whether in paper form or electronically submitted, between Sanghani and Michael Hoover, and

---

[1] Hoover and Sanghani attended Tulane University Business School together and were roommates during their tenure at Tulane. (R. Doc. 1-3; R. Doc. 23).

referring to Herbert Williams, Elizabeth "Lisbeth" Olga Deckert, Oceana Energy, and Gulf Stream Energy, Inc. (R. Doc. 93-4, Ex. B).

Florida Hydro also issued a deposition subpoena to Michael Hoover's mother, Mary Catherine Hoover ("Mary Catherine"). (R. Doc. 93-4, Ex. C). Her deposition was scheduled to take place at Jones Walker's Office on June 18, 2008. (R. Doc. 93-4, Ex. C). She also was commanded her to produce and to permit inspection of her laptop computer, flash drive, hard drive, PC or other electronic data storage for documents copied, sent to, or received by her son, Michael Hoover, relating to Florida Hydro, Gulf Stream Energy, Inc., Open Hydro Group, Ltd, Open Hydro, Inc, or Oceana Energy Co[2]. (R. Doc. 93-5, Ex. C).

Hoover brings the instant motion, seeking to reconsider the Court's Order (R. Doc. 112) requiring Mary Catherine Hoover to produce her personal computer, flash drive, PC, or other electronic data storage for inspection. (R. Doc. 122). Ms. Hoover argues that, because she believed that the Court ruled from the bench denying the subpoena, she did not have the opportunity to present evidence that: (1) she had timely objected to the breadth of Florida Hydro's subpoena; (2) she has already produced all documents which were responsive to the subpoena in her possession; and (3) she even sat for a day-long deposition on June 18, 2008, in spite of the procedural deficiency of the subpoena. (R. Doc. 122).

Florida Hydro contends that Hoover's motion should be denied, because: (1) the parties coordinated Ms. Hoover's deposition to occur at counsel for Hoover's New Orleans office; (2) her deposition occurred in this district; and (3) her failure to produce her laptop and other documents occurred in this district. (R. Doc. 128). It asserts that Mary Catherine Hoover is Michael Hoover's

---

[2]Hoover is currently employed by Ocean Energy, a competitor of Florida Hydro. (R. Doc. 94)

3

key witness who owns 50% financial interest in the outcome of this litigation. (R. Doc. 128). Therefore, Florida Hydro insists that Ms. Hoover is not a disinterested "nonparty"witness entitled to the protections of Rule 45. (R. Doc. 128). It further indicates that Hoover's counsel indicated that he would produce Ms. Hoover for deposition in the Eastern District, notwithstanding the fact that she lives in Alexandria. (R. Doc. 128). Florida Hydro therefore argues that the subpoena had to be issued from the Eastern District pursuant to Rule 45(a)(2)(B). (R. Doc. 128). According to Florida Hydro, Hoover waived and/or should be estopped from the protections traditionally provided to nonparty witnesses.

## II.     Standards of Review

### A.     Reconsideration

The Federal Rules of Civil Procedure ("Rules") do not formally recognize a motion to reconsider. *Pryor v. United States Postal Serv.*, 769 F.2d 281, 285 (5th Cir.1985). However, the Fifth Circuit treats motions to reconsider as either motions to alter or amend judgment pursuant to Rule 59(e) or motions for relief from judgment pursuant to Rule 60, depending upon the time at which the motion is filed. *Lavespere v. Niagra Machine & Tools Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). A motion for reconsideration is analyzed under Rule 59(e) if it is served within ten (10) days of the court's ruling, otherwise, it is analyzed under Rule 60(b) if it is served after that time. *Id.* Here, Hoover filed his motion for reconsideration more than ten (10) days after the Court's Order[3].

Rule 60(b) of the Federal Rules of Civil Procedure establishes that, upon motion, "the court

---

[3] The Court issued its Order (R. Doc. 112) on October 1, 2008, and it issued an amended Order (R. Doc. 116) thereafter, on October 2, 2008. Hoover filed the subject motion for reconsideration on October 14, 2008–12 days later. (R. Doc. 122).

may relieve a party or a party's legal representative from a final judgment, order, or proceeding" in six specific situations. Fed.R.Civ.P. 60(b). Rule 60(b)(6) grants a court the authority to relieve a party from a judgment where there are justifiable reasons. *Id.* Rule 60(b)(3) motions must be made "not more than one year after the judgment, order, or proceeding was entered or taken." *Id.*

### B. Scope of Discovery

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Rule 45 governs the issuance of subpoenas, and provides that on timely motion, the issuing court must quash or modify a subpoena if it requires disclosure of privileged or other protected matter, or otherwise subjects the subpoenaed person to undue burden. Fed.R.Civ.P. 45(c)(3). Under Rule 45(c)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed.R.Civ.P. 45(c)(1). Furthermore, Rule 45(c)(3) further provides that "[o]n timely motion, the issuing court must quash or modify a subpoena that . . . fails to allow a reasonable time to comply."

5

Fed.R.Civ.P. 45(c)(3).

### III. <u>Analysis</u>

Hoover argues that the inspection and production of the third-party witness Mary Catherine Hoover's laptop is not warranted and would be unduly burdensome in this case. He emphasizes that the Court orally, from the bench, quashed the subpoena, because it was issued in New Orleans even though Ms. Hoover lives in Alexandria–which is in the Western District. Hoover therefore urges the undersigned to reinstate the oral ruling in lieu of the written Order. He also contends that Ms. Hoover objected to the first subpoena and therefore preserved her objection regarding the procedural deficiency of the second subpoena.

Florida Hydro contends that the Court's Order is proper. Florida Hydro points out that, contrary to Ms. Hoover's representations, she failed to object to the June 18, 2008 subpoena. It also asserts that its counsel worked with Hoover's counsel to conduct her deposition in New Orleans on same date, at the same place and time that her computer was also required to be produced.

Rule 34 provides that "[a] person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." Fed.R.Civ.P. 34(c). Upon proper objection by a third party to the inspection ordered by a subpoena, the Court must determine whether the plaintiff's need for the inspection is sufficient to outweigh the burden imposed by the inspection on the third party. *Premium Svc. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir.1975).

A thorough review of the submissions indicates that, while Ms. Hoover objected to the original subpoena, she failed to formally object to the second subpoena. Furthermore, Hoover concedes that the parties agreed to produce Ms. Hoover for deposition in New Orleans, despite the

fact that she resides in Alexandria, Louisiana. (R. Doc. 122-2, p. 8). In accordance with this agreement, the subpoena scheduled Ms. Hoover's deposition for June 18, 2009 at the New Orleans office of Jones, Walker, Waechter, Poitevent, Carrere, and Denegre–the law firm which currently represents Michael Hoover. The subpoena also contained a request for production of her laptop and flash drive for inspection on the same date, at the same time.

The exhibit attachments show that Ms. Hoover did, in fact, submit to the deposition on the date and location as dictated by the subpoena. Yet, despite the inclusion of a clear request for the production of the laptop and other electronic devices in the same subpoena which commanded her appearance for testimony, Ms. Hoover failed to produce the requested items for inspection. Moreover, she failed to object to the production of such items. Based on the foregoing, the Court remains unpersuaded by Hoover's contention that Ms. Hoover "never agreed to withdraw her objection to the document portion of the invalid subpoena."

Upon review of the deposition testimony, the Court further notes that Ms. Hoover indicates that she changes her computer rather frequently. Although Ms. Hoover indicated in her March 18, 2008 objection that she had none of the requested information, it is unclear from the record whether she checked her computer or other digital devices to confirm that she has produced all of the information that was available regarding the subject matter of the litigation. It is also unclear whether Ms. Hoover has preserved and/or transferred the data to her new computers, given the frequency with which she purportedly discards them.

The Court further notes that, while Ms. Hoover contends that she objected to the first subpoena, the objection was based upon the fact that she produced the information in document form. The discovery rules, however, contemplate the production of e-data, which she has refused

to produce. Mary Catherine Hoover is therefore required to produce her computer for inspection at a mutually agreeable date and time, as determined by counsel for the parties.

Additionally, the Court notes that the attorney-client and work-product privileges may be preserved if appropriate controls are put in place. Counsel for both parties are therefore required to resubmit a more tailored protocol to the Court for consideration no later than ten (10) days from the signing of this Order.

## IV.　Conclusion

Accordingly,

**IT IS ORDERED** that Michael J. Hoover's **Motion to Reconsider the Court's Order (R. Doc. 112), As Amended (R. Doc. 116) Denying in Part Plaintiff's Motion To Quash Defendant's Subpoena *Duces Tecum* issued to Third Party Mary Catherine Hoover** is hereby **DENIED**.

**IT IS FURTHER ORDERED** that counsel for both parties resubmit a more tailored protocol to the Court for consideration **no later than ten (10) days** from the signing of this Order.

New Orleans, Louisiana, this 6th day of March 2009

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**