UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


**MICHAEL HOOVER**                                    CIVIL ACTION

**VERSUS**                                            **NO. 07-1100**

**FLORIDA HYDRO, INC., ET AL**                        SECTION "B"(4)

ORDER AND REASONS

Before the Court is defendant, Herbert Williams' Motion to Dismiss Plaintiff's Second Amended Complaint for lack of personal jurisdiction and improper venue (Rec. Doc. No. 150). Co-Defendant Florida Hydro filed contemporaneously herewith a Motion to Dismiss Counts Seven, Ten, Eleven, and Twelve of Plaintiff's Second Supplemental and Amended Complaint and to Strike Prayer for Punitive Damages and attorney's Fees (Rec. Doc. No. 148).

**IT IS ORDERED** that Williams' Motion to Dismiss is hereby **DENIED**; Florida Hydro's Motion to Dismiss is hereby **GRANTED** as to Counts X and XI of the second supplemental and amended complaint and **DENIED** as to the other remaining grounds.


BACKGROUND

On February 17, 2007, Plaintiff, Michael J. Hoover commenced an action against Florida Hydro alleging breach of contract (Count One), promissory estoppel (Count Two), unjust enrichment

1

(Count Three), and fraudulent inducement (Count Four). Subsequently, Florida Hydro filed a Motion to Dismiss for Lack of Jurisdiction which was denied (Ct. Rec. Doc. No. 13). Plaintiff filed his Second Amended Complaint on November 18, 2008, adding Florida Hydro's president, Herbert Williams, as a defendant and asserting five additional claims against him. Defendants now seek to dismiss Count Seven (Contract Modification through Subsequent Conduct and Breach Thereof), Count Ten (Conspiracy to Breach Fiduciary Duties), Count Eleven (Conspiracy to Effect Fraudulent Transfer), and Count Twelve (Alter Ego/ Piercing the Corporate Veil) of Plaintiff's Second Supplemental and Amended Complaint and to strike Plaintiff's Prayer for Punitive Damages and Attorney's Fees.

At the center of this case is an alleged oral contract between Plaintiff and the Florida Hydro company which is closely held by Herbert Williams. Plaintiff seeks ownership of company stock valued at approximately $6,000,000 to $10,000,000. Plaintiff asserts that on or about June 13, 2003, Mr. Williams, the president of Florida Hydro, offered Hoover Florida Hydro stock in an amount equal to one-half of Williams' stock in Florida Hydro, if Hoover successfully helped Florida Hydro secure the full amount of Commercial Funding. (RD 1-3, ¶17). Hoover

accepted the employment offer. No written instrument was ever executed. Hoover's conduct and activities subsequent to the formation of the contract constituted full performance by Hoover of his obligations. (RD 1-3, ¶¶32-34, 43). On or about July 8, 2005, Mr. Williams informed Hoover that he had decided to distribute only 6,000 shares of Florida Hydro common stock to Hoover for performance of the contract. (RD 1-3, ¶36). Plaintiff alleges that because the contract called for Florida Hydro to issue 484,250 shares to Hoover, he did not agree to accept the shares. (RD 1-3, ¶36). Due to Florida Hydro's alleged breach of contract, Hoover resigned from Florida Hydro on or about July 12, 2005. (RD 1-3, ¶37).

Defendant, Herbert Williams, seeks to have the case dismissed because he argues that the Court does not have personal jurisdiction over him. Defendant contends Hoover has not alleged that Williams purposefully directed his personal activities, rather than his activities on behalf of Florida Hydro, toward Louisiana or purposefully availed himself of the privileges of conducting personal activities there sufficient for this Court to have personal jurisdiction. He further submits that venue is improper because a substantial part of the events giving rise to the claims against him did not occur in Louisiana.

Defendant, Florida Hydro, seeks to dismiss Count Seven (Contract Modification Through Subsequent Conduct and Breach Thereof), Count Ten (Conspiracy to Breach Fiduciary Duties), Count Eleven (Conspiracy to Effect Fraudulent Transfer), and Count Twelve(Alter Ego/ Piercing the Corporate Veil) of Plaintiff's Second Supplemental and Amended Complaint and to strike Plaintiff's Prayer for Punitive Damages and Attorney's Fees. The gravamen of their memo is that these claims rely on the breach of contract and that Florida Hydro has not breached a contract.

Defendant argues that Count Seven must be dismissed because Plaintiff has not alleged sufficient conduct to show a "meeting of the minds" that Florida Hydro, instead of Gulf Stream Energy-Florida, obligated itself to transfer shares of Florida Hydro Stock to him. Florida Hydro argues that Counts Ten and Eleven fail because of the "intracorporate conspiracy doctrine," which stands for the principle that "a corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation. *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir. 1992). As to Count Twelve, Florida Hydro argues that Hoover has not stated a claim that it engaged in improper

4

conduct under Florida law sufficient to support piercing Florida Hydro's corporate veil.

In summary, Plaintiff alleges that Williams has maintained a shell corporation that conducts no business and has no assets- that Florida Hydro is an alter-ego of Herbert Williams. His allegations suggest that the corporation was used to mislead creditors or to perpetrate fraud upon them. In response to Count Seven, Hoover alleges that there was a meeting of the minds since Williams was authorized to act on behalf of both Florida Hydro and Gulf Stream Energy-Florida. He further alleges that Gulf Stream-Energy-Florida was essentially, inactive- "had no employees, investors, or shareholders... and did not conduct business of any kind." In Counts Ten and Eleven, in essence, Plaintiff alleges that the corporation, Florida Hydro conspired with its director, Herbert Williams to breach his fiduciary duties to Hoover. Further, Plaintiff submits that the intracorporate conspiracy doctrine does not apply because he alleges that Williams steps outside of his role as corporate officer, an exception to the doctrine.

Plaintiff argues that under Florida law, if an act amounts to an intentional act, the recovery of punitive damages is permitted. Moreover, because he alleges bad faith, he believe he

is entitled to attorney's fees.

## DISCUSSION

**A. Standard for Consideration of Rule 12(b)(6) Motions**

In considering a motion to dismiss pursuant to Rule 12(b)(6), "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (internal quotation omitted). The allegations need only raise "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Factual allegations must merely "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965; *accord Guidry*, 512 F.3d at 180.

The Court may not dismiss a claim unless the moving party can show, "beyond a doubt, that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008). To survive a motion to dismiss, the "complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material

points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (internal quotation and citation omitted). When a complaint contains factual allegations that lead to fair inferences that satisfy all the "material point[s] necessary to sustain a recovery," that suit has stated a claim and may not be dismissed under Rule 12(b)(6). *Id.*

### **B. Personal Jurisdiction**

A federal district court may exercise personal jurisdiction over a nonresident defendant if (1) the forum's long arm statute confers personal jurisdiction over that defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment. *Dalton v. R&W Marine, Inc.*, 897, F.2d. 1359, 1361 (5th Cir. 1990). Louisiana's long arm statute permits the exercise of personal jurisdiction to the extent permitted by the Constitution of the United States. The long arm statute inquiry and the Due Process inquiry, therefore, merge. Dalton, 897 F.2d at 1361.

The Fifth Circuit has held, "[a] court may exercise jurisdiction when (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's

contacts with the forum state." *Freudensprung v. Offshore Technical Services, Inc.,* 379 F.3d 327, 343 (5th Cir. 2004). Stated differently, where a defendant "deliberately engages in significant activities within a state, or creates continuing obligations between himself and residents of the forum, he has manifestly availed himself of the privilege of conducting business there." See *Southeast Wireless Network, Inc. v. U.S. Telemetry Corp.*, 954 So. 2d 120, 125 (La. 2007).

Defendant contends Hoover has not alleged that Williams purposefully directed his personal activities, rather than his activities on behalf of Florida Hydro, toward Louisiana or purposefully availed himself of the privileges of conducting personal activities there sufficient for this Court to have personal jurisdiction. Even if Plaintiff has presented a prima facie case for the exercise of personal jurisdiction over Florida Hydro, it does not necessarily mean that Williams, who acted on behalf of Florida Hydro, is subject to personal jurisdiction as well. However, Plaintiff alleges numerous ongoing contacts between Williams and individuals in Louisiana for the purpose of commercially developing the technology which Williams owned in his individual capacity.

Among the allegations in the complaint are that: during time Williams personally owned his patent and invention, and prior to the contract formation, Hoover's family had been trying to help Williams raise money within the State of Louisiana to commercially develop the technology (Complaint ¶ 9); an agreement between Williams and Hoover that the two would write and submit a business plan based on Williams' patent and invention for entry into a competition at Tulane University (Complaint ¶ 10); that after the invention won the competition investment interest in Louisiana spiked (Complaint ¶ 10) that during the May and June of 2003, the two engaged in a series of discussions in this state regarding the commercial terms of a licensing transaction related to Williams' patent and invention (Complaint ¶ 12). Plaintiff also points this Court to a number of other allegations where Williams is majority stakeholder in Florida Hydro. However, this Court cannot assume that merely because Williams owned approximately 96% of the stock that his subsequent actions in Louisiana were done in his individual capacity. That aside, Plaintiff has alleged sufficient purposeful direction of Defendant's personal activities which created continuing obligations between him and residents of the forum state. The allegations as a whole, if taken as true, suggest that Defendant

conducted a significant amount of business in Louisiana during the seed stage, seeking angel investors, discussing licensing options, and attempting to commercially develop and showcase the business.

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff must make only a prima facie case that sufficient minimum contacts are present to justify personal jurisdiction. *Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990). In the Court's inquiry, the allegations of Plaintiff's complaint are "taken as true," and any conflicts between Defendant's supporting affidavit and the complaint are "resolved in the [P]laintiff's favor" *Id.* Williams' numerous contacts with Louisiana prior to contract and the contract negotiations constitute sufficient contacts with the State of Louisiana to support general personal jurisdiction over Williams.

It is evident that the controversy arises out of or is related to the defendant's contacts with the forum state. Plaintiff alleges that Williams fraudulently induced him to enter into a contract during a June 2003 phone call that Williams initiated and that he directed to Hoover in New Orleans. (Rec. Doc. No. 1 ¶ 15; Rec. Doc. No. 146 Count Four). Defendant argues

that even if making a telephone call to someone in Louisiana from another state can be considered an activity within the jurisdiction, the law is well settled that a single telephone call to a resident is not sufficient to establish personal jurisdiction in Louisiana. Defendant points to *Stuart v. Spademan*, 772 F.2d 1185 (5th Cir. 1985) wherein the Court held that while the number of contacts with forum state is not determinative, it is one of relevant factors to be considered within totality of circumstances in assessing propriety of exercising personal jurisdiction over a nonresident. In that case the Fifth Circuit opined that a Court should consider "[t]he quality of the contacts as demonstrating purposeful availment is the issue, not their number or their status as pre- or post-agreement communications." *Id.* at 1194. The phone call at issue in the case at the bar was alleged to fraudulently induce plaintiff into creating an oral agreement modifying the contract (Rec. Doc. No. 1 ¶ 15; Rec. Doc. No. 146 Count Four). "When the actual content with the communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). Albeit weak, Williams' initiation of a telephone call to Hoover, during which he allegedly made

11

fraudulent misrepresentations that induced Hoover to enter the contract is sufficient to support the exercise of personal jurisdiction over Williams.

## C. Count VII- Modification of Contract

Defendant argues that Count Seven must be dismissed because Plaintiff has not alleged sufficient conduct to show a "meeting of the minds" that Florida Hydro, instead of Gulf Stream Energy-Florida, obligated itself to transfer shares of Florida Hydro Stock to him.

Under Florida law, an oral contract is valid and enforceable. *See St. Joe Corp. v. McIver,* 875 So. 2d 375, 381-382 (Fla. 2004). The terms of an oral contract can be modified but all parties must agree to the modification. *Id.* Applying *Twombly*, the factual allegations set forth must present plausible grounds to infer an agreement to modify the original agreement. See *Twombly*, 127 S.Ct. at 1965.

Hoover alleges that Williams was authorized to act on behalf of both Florida Hydro and Gulf Stream Energy- Florida. He further alleges that Gulf Stream-Energy-Florida was essentially, inactive- "had no employees, investors, or shareholders... and did not conduct business of any kind." It is reasonable to conclude that if Plaintiff's asserted facts are true, Florida

12

Hydro, not Gulf Stream obligated itself. Moreover, Plaintiff alleges that he fully performed under the contract for the benefit of Florida Hydro and that it was Florida Hydro which accepted the benefit of Hoover's efforts to raise 10 million in commercial funding for the development of Florida Hydro's technology. Plaintiff has asserted enough facts to raise a reasonable expectation that discovery will reveal an agreement and consideration to modify the original agreement.

**D. Count X & XI- Breach of Fiduciary Duty & Conspiracy to Effect Fraudulent Transfer**

Plaintiff alleges in Count Ten that Florida Hydro conspired with its president and director to breach his fiduciary duties to Hoover. (DE # 146 ¶¶ 124 & 148). In Count Eleven, Hoover alleges that Florida Hydro conspired with Herbert Williams to effect a fraudulent transfer of Florida Hydro's assets. (Id. at ¶ 158). In essence, Plaintiff alleges that the corporation, Florida Hydro conspired with its director, Herbert Williams.

Florida Hydro argues that Counts Ten and Eleven fail because of the "intracorporate conspiracy doctrine," which stands for the principle that "a corporation cannot conspire with itself any more than a private individual can, and it is the general rule

13

that the acts of the agent are the acts of the corporation. *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir. 1992).

In order to have a conspiracy, there must be two persons or entities, and a corporation cannot conspire with itself. Moreover, the acts of an agent of the corporation are the acts of the corporation itself. *Id*. Under Florida law generally, neither an agent nor an employee can conspire with his or her corporate principal or employer, except where the agent or employee has a personal stake in the activities that are separate and distinct from the corporation's interest. *Lipsig v. Ramlawi*, 760 So.2d 170 (Fla. App.3d. 2000). Defendant invokes the intracorporate doctrine as basis to dismiss Hoover's conspiracy claims.

The original purposes of the rule attributing agents' acts to a corporation were to enable corporations to act, permitting the pooling of resources to achieve social benefits and, in the case of tortious acts, to require a corporation to bear the costs of its business enterprise. Courts have fashioned an exception to the rule that a corporation cannot conspire with its employees: when the officers of a corporation act for their own personal purposes, they become independent actors, who can conspire with the corporation. See *Johnston v. Baker*, 3 Cir. 1971, 445 F.2d

14

424; R. Eickhoff, Fletcher Cyclopedia of the Law of Private Corporations ss 4884, 5032.1 (1978). In *Dussouy v. Gulf Coast Inv. Corp*, 660 F.2d 594 (5th Cir. 1981), the Fifth Circuit chose not to follow the *Nelson Radio* rule.  It must be noted that because of *Erie*, the Fifth Circuit did not have to follow the intracorporate conspiracy doctrine and instead followed Louisiana law, opining, "we cannot say that the plaintiff can establish no set of facts upon which he might prevail, so the action should not be dismissed." However  Florida  law,  not Louisiana law governs Plaintiff's conspiracy claim.

This exception applied "where corporate employees act for their own purposes" separate and apart from the corporation. *Benningfield v. City of Houston*, 157 F.3d 369, 379 (5th Cir. 1998). To show that Florida Hydro and Herbert Williams acted outside the scope of their employment, Williams must show that they acted "in their personal interests, wholly and separately from the corporation... ." *Microsoft Corp. v. Big Boy Distribution LLC*, 2008 WL 5100849, at * 12 (S.D. Fla. Dec. 3 2008). In *Microsoft Corp*, a copyright infringement case, defendants filed a counterclaim against Microsoft alleging, in part, civil conspiracy on based on alleged illegal acts conducted by Microsoft investigators during course of their investigation.

15

The Court held that since "the only evidence proffered by Big Boy in support of its civil conspiracy claim involves actions of Microsoft investigators within the scope of their employment," the conspiracy claim was foreclosed by application of the intracorporate conspiracy doctrine.

Plaintiff alleges that Williams contracted on Florida Hydro's behalf, and *personally guaranteed payment* due under the contract from his own holdings." (Complaint ¶¶ 2(b), 112). Hoover alleges that Williams agreed to "assume all liability regarding Hoover's claim as the only remaining shareholder of Florida Hydro" and "represented to the Florida Hydro board members that he had placed 3,000,000 of his OpenHydro shares 'aside' and in safekeeping to cover any potential damages from Hoover's lawsuit." (*Id*.). Personal guarantees by the company's executive to assume an obligation of this closely held company does not thereby in and of itself show an activity that is separate and distinct from the corporation's interest; nor does it, even minimally, show the existence of a conspiracy. The allegations set forth if true are insufficient to raise a question as to whether Williams had a personal stake in the conspiratorial actions alleged by Plaintiff and that even if the intracorporate conspiracy doctrine applies as a matter of law.

16

**E. Count XII- Piercing the Corporate Veil**

Florida Hydro argues that Hoover has not stated a claim that it engaged in improper conduct under Florida law sufficient to support piercing Florida Hydro's corporate veil. Under Florida law, veil piercing is appropriate where both (1) the corporation is an instrumentality or the alter ego of the individual, and (2) the defendant engaged in improper conduct in the "formation of use of the corporation." *Patin v. Throughbred Powerboats*, *Inc.*, 294 F.3d 640, 647 (5th Cir. 2002). In *Patin*, the Fifth Circuit, applying Florida law, upheld the district court finding the piercing of the corporate veils of boat manufacturer and its successor corporation based on findings that the corporations were both alter egos of owner, and that the transformation of manufacturer to successor involved "improper conduct." Moreover, even observance of corporate formalities in the transformation did not preclude piercing the corporate veils. *Id. at 640-649.*

The Florida Supreme Court has imposed a strict standard upon those wishing to pierce a corporate veil. Generally, the rule is that the corporate veil will not be pierced absent a showing of improper conduct. *Dania Jai- Alai Palace, Inc. v. Sykes*, 450 S0.2d 1114, 1121 (Fla. 1984). Plaintiff must also show that "the fraudulent or improper use of the corporate form caused injury to

the claimant." *Seminole Boatyard, Inc. v. Christoph*, 715 So.2d 987, 990 (Fla 4th DCA 1998). Plaintiff alleges that Williams has engaged in a course of conduct that blurs the line between the corporate form and himself by assuming personal liability for Hoover's suit, which was originally brought against Florida Hydro; retaining personal ownership of property while representing to the public that the property belongs to Florida Hydro; and by transferring Florida Hydro funds to other projects and corporations, without observing any corporate formalities. Hoover further alleges that Williams "has maintained Florida Hydro on "active status" with the Florida Division of Corporations to fraudulently avoid his fiduciary duties to Florida Hydro's creditors.

In summary, Plaintiff alleges that Williams has maintained a shell corporation that conducts no business and has no assets-that Florida Hydro is an alter-ego of Herbert Williams. His allegations suggest that the corporation was used to mislead creditors or to perpetrate fraud upon them. If these allegations according to Federal Rule of Civil Procedure are taken as true, they satisfy the pleading requirements for a piercing claim. As discovery develops, a contrary result may arise in a different context, i.e. summary judgment.

## F. Prayer for Punitive Damages & Attorney's Fees

Under Florida law, if an act amounts to an intentional act, the recovery of punitive damages is permitted. *Splitt v. Deltona Corp.*, 662 F.2d 1142, 1145 (5th Cir. 1981); *see also Morellite v. American Tower, L.P.*, 819 So. 2d 928, 935 (Fla. 2d DCA 2002). Aside from the breach of contract claims, the other claims are tort claims, making punitive damages an appropriate remedy under Florida law. Defendant argues that each of the claims where punitive damages are appropriate is predicated and arises out of Florida Hydro's alleged breach of contract. If Plaintiff is not successful in the breach of contract claim, then all the other claims should fail. However, it is premature at this stage to strike the punitive damage claim.

In regard to attorney's fees, under Florida law, attorney's fees may be awarded as general damages if "one party has acted in bad faith..." *Hilton Oil Transp. v. Oil Transp. Co.*, 659 So.2d 1141, 1153, (Fla. 3d DCA 1995). Plaintiff alleges fraudulent inducement and bad faith breach of contract. These allegations are sufficient at this time to support a prayer for attorney's fees.

**CONCLUSION**

Accordingly, Williams' Motion to Dismiss is hereby **DENIED**; Florida Hydro's Motion to Dismiss is hereby **GRANTED** as to Counts X and XI of the second supplemental and amended complaint and **DENIED** as to the other remaining grounds.

New Orleans, Louisiana, this 14th day of May, 2009.

IVAN L.R. LEMELLE
UNITED STATES DISTRICT JUDGE