UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| MICHAEL J. HOOVER, | * * | CIVIL ACTION |
| Plaintiff, | * * | NO. 07-1100 |
| v. | * * | SECTION "B"(4) |
| FLORIDA HYDRO, INC. AND HERBERT L. WILLIAMS, | * * | JUDGE LEMELLE |
|  | * | MAGISTRATE JUDGE ROBY |
| Defendants. | * |  |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO FLORIDA HYDRO'S MOTION TO BIFURCATE TRIAL**

Plaintiff, Michael J. Hoover, ("Hoover" or "Plaintiff"), respectfully submits this memorandum in opposition to the Motion to Bifurcate Trial (Rec. Doc. 185) filed by Defendant, Florida Hydro, Inc. ("Florida Hydro"), pursuant to Rule 42(b) of the Federal Rules of Civil Procedure.  For the reasons set forth herein, Defendant Florida Hydro's Motion to Bifurcate Trial should be denied.

**I.   INTRODUCTION**

In its motion, Florida Hydro requests that this Court bifurcate the counts by dividing "(1) claims relating to breach of contract [Counts 1-7]; and (2) claims relating to fraudulent transfer [Counts 8, 9, and 12]."[1]  As Plaintiff explains below, Florida Hydro's proposal does nothing to promote the purposes behind Rule 42(b).  On the contrary, Florida Hydro's motion to bifurcate is the latest event in Defendant's strategy to delay the trial and to prejudice Plaintiff's case.

---

[1] This Court has recently dismissed Counts Ten (Conspiracy to Breach Fiduciary Duties (against Florida Hydro and Williams)) and Eleven (Conspiracy to Effect Fraudulent Transfer (against Florida Hydro and Williams)).  (Rec. Doc. 192).  In the same ruling, the Court rejected Defendants' attempt to have Counts Eight, Nine, and Twelve dismissed.  (*Id*.)  Therefore, Plaintiff will address only the remaining claims in this memorandum.

{N1991892.3}                                                1

Moreover, regardless of their purported concerns for "expediting" this matter by having the Court hold two trials, Defendants have been less than diligent in preparing this matter for the August 2009 trial date. This motion itself is a prime example: Florida Hydro filed this Motion to Bifurcate on April 28, 2009, fully six months after its counsel consented to Plaintiff's filing his Second Supplemental and Amending Complaint, adding several causes of action (Rec. Doc. 146), and seven months after Defendant Herbert Williams was added to the case as a defendant.[2] In fact, Florida Hydro's motion falls within the consistent pattern of delay tactics that Defendants have utilized to stall the progress of this case, to cause Plaintiff to incur added expense to prosecute the case, to delay producing documents that the Court has repeatedly ordered be produced, and to prejudice Plaintiff by imposing on him the difficult and unnecessary burden of trying two separate actions. The Court should reject Defendant's transparent tactics and deny its motion to bifurcate.

## II.     LAW AND ARGUMENT

### A.     Legal Standard for Bifurcation

The Fifth Circuit has cautioned that "[s]eparation of issues . . . is not the usual course that should be followed." *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993); *see also Cousin v. Small*, 2001 WL 409534, at *1 (E.D. La. Apr. 20, 2001) (bifurcation of claims is "the exception, not the rule"); *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 114-15

---

[2] Defendant's protests that Plaintiff amended the complaint to enumerate "14 counts" and filed it "on the eve of the extended deadlines to amend pleadings" (Def. Mem. at 5) is hardly worthy of response in light of the facts that: (a) Plaintiff's original complaint amendment was filed within the Scheduling Order deadline (*see* Rec. Doc. 126, for which leave was sought on October 20, 2008; *see also* Scheduling Order, Rec. Doc. 109, at 1); (b) Defendant consented to Plaintiff's second motion to amend (Rec. Doc. 145), which pared several counts from the first amendment; (c) the amended pleading clearly fell within the scope of Fed.R.Civ.P. 15(a)(2), *see Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1999) (motion to amend a complaint should not be denied without "substantial reason"); and (d) the claims Hoover added by its October 20, 2008, amendment (and re-averred in its subsequent consent Motion to Amend) are grounded in facts Plaintiff learned from a declaration Williams filed with the Court on October 7, 2008, less than 14 days earlier. (*See* Rec. Doc. 117-6 at 1-2 (Williams declaration describing steps he took to liquidate the Florida Hydro stock that is the subject of Hoover's claim)).

(E.D. La. 1992) (courts should not order separate trials "unless such a disposition is clearly necessary"). Moreover, Florida Hydro, as the party moving for separate trials, bears the burden of persuasion. *Fuji Mach. Mfg. Co. v. Hover-Davis, Inc.*, 982 F. Supp. 923, 924 (W.D.N.Y. 1997). Although the Court enjoys discretion to order separate trials, the bifurcation of claims is only appropriate when a considered analysis strongly indicates that bifurcation will serve the intentions of Rule 42(b) – "[for] convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy[.]" Fed.R.Civ.P. 42(b); *Williams v. Treasure Chest Casino, L.C.C.*, 1998 WL 42586, at *9 (E.D. La. Feb. 3, 1998) (Vance, J). For such an analysis these factors apply: "(1) whether the issues are separate issues; (2) whether the issues could be tried separately without prejudice; (3) whether a separate trial would be conducive to judicial economy; and (4) whether [bifurcation] interferes with a party's right to a jury trial under the Seventh Amendment." *In re: Propulsid Prods. Liab. Litig.*, 2003 WL 22023398, at *3 (E.D. La. Mar. 11, 2003). Bifurcation of claims is only appropriate in situations where the issues to be separately tried are "so distinct and separable from the others that a trial of [the separated issue] alone may be had without injustice." *McDaniel,* 987 F.2d at 305. Separation of issues is not appropriate when claims share legal and factual issues, or when such separation causes prejudice to the non-moving party. *State of Alabama v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) ("Such a rule is dictated for the very practical reason that if separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent.").

> **B.     Defendant Has Not Met Its Burden of Demonstrating that this Case is Appropriate for Bifurcation under Fed.R.Civ.P. 42(b).**
>
> > **1.     Florida Hydro's attack on the merits of Hoover's claims ignores its own Answer.**

After a lengthy discussion regarding Plaintiff's decision to continue his earlier preliminary injunction effort,[3] the point of which remains unclear, Florida Hydro largely bases its argument for bifurcation on the proposition that it will prevail on Plaintiff's breach of contract claims.  Defendant states that "it is simply implausible that Williams would orally agree to give Plaintiff, newly graduated from law school, such a significant ownership interest in one of his companies."  (Def. Mem. at 9-10).

This logic clashes directly with Florida Hydro's Answer to the Complaint, in that Defendant responded that Williams orally agreed to compensate Plaintiff with precisely the same significant percentage ownership interest in stock held by Williams.  The difference is that Florida Hydro claims that the Plaintiff's deal was with Gulf Stream Energy, Inc. (Florida), a company Williams testified was a Florida Hydro subsidiary. (Williams Dep. (Exh. A), at 33).

Florida Hydro's Answer states in part as follows:

> . . . [A]dmitted that Plaintiff and his mother and Gulf Stream Energy, a Florida corporation, **orally agreed to terms that if Plaintiff and his mother were personally responsible for raising a commercial funding of $10,000,000 USD** for Gulf Stream Energy, the Florida corporation, **then stock in Gulf Stream Energy owned by Williams would be payable to Plaintiff** and his mother at the time of execution of an agreement for commercial funding in the amount of $10,000,000 USD, **and would be calculated** based on Mr. Williams' holdings, at

---

[3] Florida Hydro's extensive discussion of the preliminary injunction standards in its memorandum is entirely irrelevant to the issues presented on its motion to bifurcate, and only serves as another transparent attempt to confuse the issues before the Court.  Plaintiff withdrew its motion for a preliminary injunction because Defendant Herbert Williams offered a Declaration that the shares that were the subject of the injunction had been "liquidated."  *See* Declaration of Herbert Williams, attached to Defendant's Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. (Rec. Doc. 117-6).  Because Williams had acted to "liquidate" the shares (despite assuring his board of directors he would not do so), Plaintiff passed his preliminary injunction motion knowing that an adequate remedy at law existed.  (Rec. Doc. 118).

> that time of execution, **so that Williams would retain exactly twice as much stock in Gulf Stream Energy as Plaintiff** and his mother post-funding."

(Rec. Doc. 23 at ¶ 17 (emphasis added)). Thus, it is not only "plausible" that such a contract could be formed, it is a fact that *both* defendants *have confirmed*.[4] Defendant's citation to *Weschler v. Hunt Health Sys. Ltd.*, 2003 WL 21878815 (S.D.N.Y. Aug. 8, 2003), which involved a *disputed* claim of the existence of an oral contract, is therefore inapposite. The trial of this case will not focus upon a "he said, he said" between Hoover and Florida Hydro's Williams as to *whether* they entered into a contract with a Florida Hydro entity; instead, the only dispute remaining is *which* Florida Hydro entity Williams bound to the contract with Plaintiff — a contract Williams clearly admits that he made.

That the Hoover-Florida Hydro contract is "plausible" is further confirmed by the pattern of Williams' actions in regularly offering Florida Hydro stock to third parties in exchange for services. For instance, Williams has admitted that in August 2003, only two months after orally contracting with Hoover, he entered into another verbal promise with a third party to exchange Florida Hydro stock for that individual's services to the company. In that instance, as Williams himself has testified, the third party agreed to accept five (5%) percent of the company's equity in exchange for a year of work, with no obligation to raise any outside investment or other capital. (Williams Dep. (Exh. A) at 209-14 (admitting oral contract with Dan Power, whose only duty was to "work with" Williams for a year)).

At that same time, after being "in business" for five years, in 2003 Florida Hydro was out of money and had no revenue or employees, and Williams had put the company in debt to angel

---

[4] Herbert Williams recently answered the Plaintiff's Complaint, as amended. (*See* Rec. Doc. 212, filed May 29, 2009). In his Answer, Williams "adopts and incorporates the answer of Florida Hydro" to, *inter alia*, paragraph 17 (*see id.*, ¶ 17, p. 3), and elsewhere states that "an oral agreement was reached between Plaintiff and Gulf Stream Energy – Florida." (*Id.*, ¶ 69, p. 5; *see also* ¶¶ 72(a), 76).

investors and lenders for at least $530,000, with payoff values of more than $1.5 million. (*See* M. Hoover Dep. (Exh. C) at 91; Florida Hydro's Answer, Rec. Doc. 23, ¶ 8). Without a significant capital infusion, lenders could not be repaid, and the technology upon which the company was based (and that Williams had purported to license to it) could not be developed. (*See* Florida Hydro's Answer, Rec. Doc. 23, ¶ 8 ("[a]dmitted that Williams had not secured the level of capital or investment necessary to develop Williams' Invention into a viable commercial underwater marine turbine for the generation of electricity"; *see also* Williams' Answer, Rec. Doc. 212, ¶ 8 (adopting Florida Hydro's Answer)). With this background, the logical bridge to the Hoover-Florida Hydro contract – which required that $8 to $10 million of new capital be found – is not difficult: Williams was asking Hoover to help insure the company's very survival.[5]

Despite these facts, Florida Hydro insists on speculating that the "much more plausible factual scenario is what actually happened – Williams agreed that if Plaintiff and his mother (who had been working on this for a couple of years) came up with $8 to $10 million in financing, Williams would make Plaintiff and his mother owners in Gulf Stream Energy (Florida), to which Williams would license the technology." (Def. Mem. at 10). It is tantamount to suggesting that the Hoovers raise capital for a "shell" company that neither held the technology nor had any angel investors to repay. This absurd position begs the question: how

---

[5] Williams had not used the lenders' and investors' money solely for Florida Hydro's operations. He often spirited away tens of thousands of these dollars to his other business, Concrete Docks Company, with neither Florida Hydro's investors' knowledge nor their consent. *See* Dep. of Cornelia Danese, as corporate representative of Florida Hydro, Inc., excerpted as Exh. B hereto, at 39-40 ("if Concrete Docks, for whatever reason, needed money, Florida Hydro would loan Concrete Docks money") and Exh. 105 thereto (showing loans to Concrete Docks and "to others"). Florida Hydro simply could not repay these "angel investors" without significant new capital to develop the Technology (and it certainly could not repay them with funds from Gulf Stream Energy (Florida), a company Williams admits was, at all pertinent times, an asset-less "shell" that was a "subsidiary" of Florida Hydro that had never issued any shares). *See* Williams Dep., Exh. A, at 32-33 (GSE-Florida formed as a subsidiary to FH), 97 ("it was just a shell"), and 35 (never issued any stock).

would the Florida Hydro lenders react if they learned that new capital had been placed out of their reach in another company?

Not only is this nonsense; Defendant's variation is also grossly inconsistent with the evidence in this case. For instance, Florida Hydro places great weight on paragraph 12 of Plaintiff's Complaint for the proposition that the oral agreement was between Hoover and Gulf Stream Energy (Florida), and not with Florida Hydro, apparently because of that paragraph's reference to Hoover approaching Williams about *licensing* the underlying turbine technology to "Gulf Stream Energy." (Def. Mem. at 10). That Complaint paragraph, however, refers to Gulf Stream Energy, Inc., a *Louisiana* corporation (hereinafter "GSE-Louisiana"). GSE-Louisiana was formed in 2003 and is *completely unrelated* to Gulf Stream Energy – Florida (formed in 2001), with the sole exception that GSE-Louisiana shares a name with the Florida Hydro subsidiary. Any contrary suggestion is quickly put to rest by the "proposed licensing agreement" referenced in paragraph 12, which specifically names only GSE-Louisiana. (*See* Dep. Exh. 75 to Williams Dep. (Exh. A) at 112). Williams, on Florida Hydro's behalf and using its letterhead, rejected this licensing agreement in favor of the oral agreement, which was witnessed by non-party Shaun Sanghani. (*See* Dep. Exh. 35 to C. Hoover Dep. (Exh. E) at 172 (Florida Hydro rejection letter); Sanghani Dep. (Exh. D) at 121-128).

Defendant's claim that the oral agreement existed among Plaintiff, his mother, and Florida Hydro's subsidiary Gulf Stream Energy (Florida) is also contrary to the evidence. Hoover's mother did not participate in the telephone conversation in which Williams made the oral contract with Hoover. (*See* C. Hoover Dep. (Exh. E) at 47-48; Sanghani Dep. (Exh. D) at 128). Meanwhile, Defendant fails to explain how Michael Hoover had the legal authority to bind his mother to any contract. In fact, Florida Hydro has not cited a single valid item of evidence

that contradicts any of the above facts or that supports its story. Rather, Defendant's so-called "very real" defense is a mumbo-jumbo of misplaced monikers and misrepresentations of the merits of its own case.

### 2. Plaintiff is already a "creditor" of Florida Hydro under Florida law.

Putting aside Florida Hydro's arguments on the merits of Plaintiff's contract claims, it argues that Plaintiff does not qualify as a "creditor" of Florida Hydro and that a separate trial to determine that status – *i.e.*, that the Court reach a preliminary finding of breach of contract, detrimental reliance, or fraudulent inducement. – is required. (*See* Def. Mem. at 9 (stating that "no citation to authority" is needed for such a proposition)). This position is mistaken as to the law and the facts. Simply put, Hoover is a "creditor" already, and no "separate trial" solely on contract claims is warranted.

Florida's Uniform Fraudulent Transfer Act defines a "creditor" as "a person who has a claim." FLA. STAT. § 726.102(4). A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.*, § 726.102(3). Hoover, as a party that has timely asserted a legal claim against Defendants, plainly fits the description of a "creditor" under Florida law. *See Friedman v. Heart Inst. of Port St. Lucie, Inc.*, 863 So. 2d 189, 193 (denying defendant's motion to stay a fraudulent transfer claim and concomitant discovery until the first claim was resolved, and noting that Florida law "automatically endows plaintiffs under the Act with 'creditor' status"); *Cook v. Pompano Shopper, Inc.*, 582 So. 2d 37, 40 (Fla. 4th DCA 1991) ("A 'claim' under the Act may be maintained even though 'contingent' and not yet reduced to judgment."); *Money v. Powell*, 139 So. 2d 702, 703 (Fla. 2d DCA 1962) ("In this state contingent creditors and tort claimants are as fully protected against fraudulent transfers as

holders of absolute claims."). Defendant's argument that Plaintiff is not a "creditor" of Florida Hydro is simply unsupported and incorrect.

### 3. The merits of Plaintiff's claim against Herbert Williams

Separately, Florida Hydro argues that unless bifurcation is ordered, co-defendant Herbert Williams will be prejudiced. At the outset, it should be noted that Defendant Williams has neither filed a motion seeking bifurcation of the case nor joined in the instant motion, even though Plaintiff's First Supplemental and Amended Complaint added him as a Defendant nearly eight months ago (Rec. Doc. 146, filed October 20, 2008), and this Court has recently denied Williams' Motion to Dismiss Plaintiff's Second Amended Complaint for Lack of Personal Jurisdiction and Improper Venue. (Rec. Doc. 192). Therefore, Florida Hydro has failed even to join as a movant their co-defendant, who would certainly be affected by such a modification in procedure.[6]

The only way bifurcation could promote convenience or economy in this case is if both Defendants, Florida Hydro and Herbert Williams, participate in the trial on the oral contract-related counts. Otherwise, having two trials for two different defendants would delay resolution, increase litigation costs, and create an unreasonable burden on the Court's and Plaintiff's resources. *See, e.g., Blue Bird Body Co.*, 573 F.2d 318 (cautioning against inconsistent jury results). Nonetheless, while Florida Hydro devotes significant space boasting that it will prevail on the issue of whether Hoover had an oral contract with Florida Hydro or Gulf Stream Energy (Florida), Florida Hydro overlooks the fact that Hoover has also sued Williams for fraud. (*See*

---

[6] In fact, Williams has been participating in his individual capacity since the very beginning of the discovery process. *See* Exh. F, March 3, 2008 Correspondence with Defendant's Counsel Lawrence Abbott (suggesting that the deposition of Williams and the corporate deposition of Florida Hydro, Inc. be taken "simultaneously," because Williams' "personal knowledge is identical to that he possesses and will testify about as the Rule 30(b)(6) designee.")

Complaint, as amended (Rec. Doc. 146), Count Four (Fraudulent Inducement), ¶¶ 61-81). The case against Williams individually is strong.[7] Yet movant Florida Hydro suggests that Hoover can only trigger an examination of fraudulent transfer liability by proving that <u>Florida Hydro</u> is liable for breach of contract. Apparently, Florida Hydro would have this Court hold a first trial phase against Williams as to fraud and a second phase as to Florida Hydro on the same claim. Once again, its position makes no sense and is unsupported by jurisprudence.

### 4. Defendant suffers no undue prejudice from a single proceeding.

#### a. The evidence on the Plaintiff's claims overlap.

Defendant maintains that the fact that the "jury will be considering a dependant fraud claim at the same time it considers the breach of oral contract" would be "unfairly prejudicial" to it. (Def. Mem. at 12). However, even under the Defendant's proposed bifurcation, questions of fraud, as well as other tortious conduct, will hardly be virgin territory for a jury. On the contrary, as set forth above, the contract claims include allegations of fraudulent inducement, as well as bad faith contract breach and breach of the implied covenant of good faith and fair dealing.[8] *See Morse/Diesel, Inc. v. Fidelity & Deposit Co. of Md.*, 763 F. Supp. 28, 34 (S.D.N.Y. 1991) (finding that allegations of bad faith are identical to allegations of fraud); *Leased Optical Depts.-*

---

[7] Numerous facts support such a claim. For instance, Williams testified by deposition that he was not sure whether he ever licensed his technology to Florida Hydro prior to 2005, while he is certain that he personally controlled this company completely up until that time, and that he effectively trotted the sole valuable asset – the turbine technology – around as a "carrot" to potential investors, all the while without telling them that his company had no legal right to it. (*See* Williams' Dep. (Exh. A), at 259). Williams also testified that Gulf Stream Energy (Florida) was a shell company with no assets, no bank account, no issued shares of stock, and no technology. (*Id.* at 32-35, 97, 209-214).

[8] Thus, Defendant's citation of *Industrial Hard Chrome Ltd. v. Hetran, Inc.*, 2001 U.S. Dist. LEXIS 1212, at *1 (N.D. Ill. Feb. 7, 2001), has no application here because it is case whose *purely contractual* claims had no allegations of fraud in the making of the contract. *See id.* at *4 (bifurcating claims for breach of contract, breach of implied warranty, breach of express guaranty, breach of contract and breach of implied warranty of merchantability from claims of fraudulent conveyance). Moreover, *Industrial Hard Chrome Ltd.* did not even address alter ego claims, which involve questions as to the true identity of the party who fraudulently induced Hoover into this contract.

*Montgomery Ward, Inc. v. Opti-Center, Inc.*, 120 F.R.D. 476, 480 (finding that discovery regarding contract and fraud claims overlap, and defendants' objections of "piecemeal" discovery should be rejected). In fact, fraudulent transfer is a derivative claim of fraudulent inducement, even when the underlying breach of contract claim is found not to be viable. *McIntosh Land Co. Ltd. P'ship v. Fairfield Fletcher Ltd. P'ship*, 2005 U.S. Dist. LEXIS, at *28-*29 (M.D. Fla. Oct. 18, 2005).

Florida Hydro also contends that litigating a fraudulent transfer claim would require presenting "evidence relating to the transfer of OpenHydro shares to Florida Hydro, the establishment of a nominee account in Ireland, the exchange of shares of stock, the 'set aside' of shares by Williams, the subsequent conversion of the set aside shares, and Florida Hydro's insolvency." (Def. Mem. at 12-13). Since March 2005, Florida Hydro has been purely a stock-holding company with no active business other than to litigate this action.[9] Thus, a trial on the actions it took from then until 2008 would hardly consist of complex scientific or highly technical issues that a jury would have difficulty understanding. *See Light v. Allstate Ins. Co.*, 182 F.R.D. 210, 213 (S.D.W.Va. 1998) (holding that when the facts regarding a breach of contract and bad faith claims are straightforward, there "is not a level of complexity to the evidence that would warrant presentation in two separate trials").

### b. Florida Hydro's counterclaim overlaps Plaintiff's claims.

Florida Hydro also seems to have forgotten that it has lodged a counterclaim against Hoover alleging theft of trade secrets, replevin, and conversion. (*See* Rec. Doc. 23, ¶ 90, *et seq.*). Specifically, Florida Hydro claims that "Hoover stole Florida Hydro's trade secrets, and, upon

---

[9] Both Florida Hydro's President, Herbert Williams, and his wife, Cornelia Danese (both of them testifying as corporate representatives of Florida Hydro), admit that Florida Hydro became a holding company with no real business as of March 2005. (*See* Danese Dep. (Exh. B) at 25-26 (admitting that Florida Hydro ceased being an operating company, and became a holding company, in early 2005); Williams Dep. (Exh. A) at 97 (admitting that Florida Hydro has no business whatsoever)).

{N1991892.3}                                  - 11 -

information and belief, has used this information to benefit or gain a competitive advantage for himself and his new employer Oceana." (*Id.*, ¶ 93). Florida Hydro also claims that it has suffered unspecified damages as a result of Hoover's alleged actions. (*Id.*, ¶¶ 94, 102). Interestingly, the very examination of stock transfer evidence Defendant wishes to defer to a second trial is the same evidence that a jury must consider in the first trial in order to make a determination on the counterclaim Florida Hydro has brought against Hoover, as damages to Florida Hydro (which has been no more than a holding company since 2005) must be demonstrated through the company's financial records. As a consequence, bifurcating these claims will undoubtedly result in a mass duplication of evidence, require re-calling the same witnesses to testify to the same substantive facts, and runs the ever-present risk of inconsistent jury verdicts on the same issues. *See Williams*, 1998 WL 42586, at *10 (bifurcation would force the court to "endure two separate, and potentially repetitive discovery processes and trials"); *McDaniel*, 987 F.2d at 305 ("The limitation on the use of bifurcation is a recognition of the fact that inherent in the Seventh Amendment guarantee of a trial by jury is the *general right of a litigant to have only one jury pass on a common issue of fact*.") (emphasis original).

Finally, Defendant also overlooks the role of the Court in crafting appropriate jury instructions in the case of any potential prejudice.[10] *U.S. v. Butler*, 429 F.3d 140, 147 (5th Cir. 2005) ("[A]ny possible prejudice [from combining intertwined contract and fraud counts] can be cured by proper jury instructions administered by the district court."). Juries are presumed to follow their instructions and "less drastic measures, such as limiting instructions, often will

---

[10] Defendant's argument that "bifurcation would also alleviate unfair prejudice with respect to discovery" is now moot. (Def. Mem. at 14). Defendant is now under Court order to respond to all of the "prejudicial" discovery requests it lists in its Memorandum, following the Court's grants of two separate Motions to Compel. (*See* Rec. Doc. 171, granted April 29, 2009 and Rec. Doc. 191, granted May 27, 2009).

suffice to cure any risk of prejudice." *Zafiro v. U.S.*, 506 U.S. 534, 540-41 (1993). Furthermore, simple speculation that such prejudicial implications automatically follow from interwoven contractual and fraud counts is not sufficient in itself to bifurcate, particularly when fraudulent inducement – as well as other torts implicating Defendant's bad faith – is included with the contract breach-related cause of action. *See Peace Lake Towers, Inc. v. Indian Harbor Ins. Co.*, 2007 WL 925845, at *3 (E.D. La. Mar. 23, 2007) (Vance, J.) ("Any prejudice to [defendant] that could result from the joint trial of the claims of coverage and bad faith can be cured by appropriate instructions to the jury."); *Ferguson v. State Farm Ins. Co.*, 2007 WL 102127, at *1 (E.D. La. Jan. 9, 2007) (Berrigan, J.) ("Any prejudice [resulting from the joint trial of coverage and bad faith], however, would not be substantial enough to warrant separate trials and would not be judiciously expeditious[.]").

### C. Granting Defendant's Motion to Bifurcate Will Result in Unnecessary Delay and Additional Expense and Cause Serious Prejudice to the Plaintiff.

Bifurcating the trial under the circumstances here would only result in prolonging this litigation, not abbreviating it. As a result, bifurcation will further increase the burden on Plaintiff by causing unnecessary delay and additional expense — factors that must be emphasized in a court's consideration. *Guedry v. Marino*, 164 F.R.D. 181, 187 (E.D. La. 1995) (the court "embraces the time-honored premise that an unreasonable delay in a case's resolution amounts to prejudice to the one opposing separation"); *Laitram Corp.*, 791 F. Supp. at 115 (E.D. La. 1992) (promotion of "judicial economy" notwithstanding, courts "should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice").

Already, Defendant's conduct in the early stages of this litigation has been punctuated by improper discovery objections, repeated failures to disclose court-ordered documents, refusals to

supplement discovery resposnes, evasive scheduling maneuvers, and failures to respond to Plaintiff's good faith efforts to resolve these matters without court intervention. *See, e.g.,* March 27 and 29, 2009 Correspondence between Plaintiff's Counsel Andrew R. Lee and Defendant's Counsel regarding Pre-Trial Matters, attached as Exhibit G..

Defendant's timing in bringing this motion is suspect in light of the fact that this Court, through Magistrate Judge Roby, has granted three separate Motions to Compel Discovery filed by Plaintiff[11] — two of them recently — rendering Defendant's request to stay discovery moot. Meanwhile, Defendant has filed a witness and exhibit list consisting of 69 pages (compared to Plaintiff's 23-page list) wherein it names witnesses not previously disclosed and lists exhibits that it has not provided to Plaintiff, and has only in the last week decided to depose individuals residing as far away as Ireland,[12] while dodging a two-month effort by Plaintiff to complete the depositions of the Defendants and their principals. (*See* Exh. G).

Finally, and most disturbingly, Defendant incorrectly states in its Memorandum that "the parties are contemplating requesting to postpone the trial in order to conduct discovery on Counts Eight through Twelve." (Def. Mem. at 17). Inasmuch as this assertion suggests that Plaintiff is complicit in Defendant's plan to delay this litigation even further, this statement is

---

[11] *See* Rec. Docs. 70, 171, and 191.

[12] This deposition was noticed by *Defendant* despite the fact that it feared one of the results of a motion to bifurcate being denied was that "Plaintiff may seek to depose witnesses from Ireland regarding the fraudulent transfer action." (Def. Mem. at 17). In fact, Plaintiff has not listed any foreign-based witnesses as his trial witnesses. In addition, as of May 28, 2009, Defendant has sought to add the depositions of witnesses that were identified in Plaintiff's Rule 26(a) Initial Disclosures, exchanged in *October 2007*. Moreover, despite the appointment of four competent counsel to this case, Florida Hydro has insisted that only one attorney, James Middleton, who is apparently extremely busy (*see* Rec. Doc. 217 (Motion to Continue), at 4), defend these depositions.

flatly false. Plaintiff has on multiple occasions clearly conveyed his position that he does not want the bifurcation or the continuance of this trial.[13]

Allowing bifurcation in these circumstances rewards the Defendants' obstreperous conduct, just as it continues to prejudice Plaintiff, who will incur greater expense and suffer continued prejudice on account of Defendant's dubious strategy. *See Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 99 (D.N.J. Dec. 6, 2006) ("Defendants' persistent pattern of delay, defiance of Court Orders, evasive responses to Plaintiff's discovery requests, and lack of candor have resulted in crushing prejudice to Plaintiffs [ … ] and extraordinary expenditures of time, effort, and money."). Moreover, it allows Defendant to profit from a stonewall strategy in future campaigns, such as its clear current intent to pursue a motion to continue the trial. (Rec. Doc. 217).

## CONCLUSION

This Court has unequivocally recognized that when a separation of trials would not expedite the litigation, decrease costs to the parties, or make it easier "for either side to prepare trial evidence," a bifurcation is neither warranted nor justified. *See Pioneer Natural Res. USA, Inc. v. Diamond Offshore Drilling, Inc.*, 2007 WL 2127815, at *2 (E.D. La. Jul. 23, 2007) (Lemelle, J.). Defendant Florida Hydro fails to meet its required burden of demonstrating that its

---

[13] Moreover, it cannot be ignored that Defendant's tactics up to this point have resembled that of "scorched earth litigation" as described in the recent case of *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81 (D.N.J. Dec. 6, 2006) (finding that defendant's actions in 1) not producing documents following multiple court orders for their production following plaintiff's motions to compel; 2) revealing documents for the first time as proposed trial exhibits without prior disclosure; 3) being non-responsive to plaintiff's request for supplementation and completion following correspondence identifying deficiencies in the defendant's production; 4) relying on a paralegal for complicated and extensive electronic production; 5) continuing to withhold discovery on boilerplate "burdensome" objections even after being overruled; 6) engaging in consistent failure to search for documents; 7) withholding documents relevant to depositions until after the depositions were taken; and 7) independently "interpreting" court rulings in order to avoid production, was a "concerted war to waste huge time and resources of Plaintiffs" that gave the term "'scorched earth litigation' a new standard of brashness."). Filing a motion to bifurcate is yet another "scorched earth" obstacle that Defendant has erected in an attempt to block Plaintiff from reaching his goal of a "just, speedy, and inexpensive determination" of his claims. Fed.R.Civ.P. 1.

proposed bifurcation procedure will uphold the purposes of convenience, judicial economy, and the avoidance of prejudice to the Plaintiff required under Rule 42(b).  Therefore, Defendant Florida Hydro's Motion to Bifurcate should be DENIED.

Respectfully submitted,

*s/ Andrew R. Lee*
Andrew R. Lee, T.A. (21196)
Neely Sharp Griffith (28601)
Avery B. Pardee (31280)
Erin E. Gilson (32040)
JONES, WALKER, WAECHTER, POITEVENT,
 CARRÈRE & DENÈGRE L.L.P.
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170
Telephone:  (504) 582-8000
Facsimile:  (504) 589-8664
Attorneys for Plaintiff, Michael J. Hoover

### CERTIFICATE OF SERVICE

I hereby certify that I have on this 2nd day of June, 2009, served a copy of the forgoing pleading on all counsel of record via the CM/ECF system and/or e-mail.

*s/Andrew R. Lee*
